Our final case this afternoon is in re Marriage of Yanger, am I pronouncing it correctly? Yanger, Ginger, Denosky vs. John Denosky Counsel, you want to approach and prepare? Okay, Ms. Scott, would you like to proceed when you're ready? May it please the Court and Counsel Your Honors, we're here today regarding the appeal from the judgment of dissolution of marriage that would have entered between the parties Ginger Denosky and John Denosky And the matters all relate to issues concerning their three minor children, Signed Noah and Ewan, who at the time that the judgment was entered were ages 6, 4, and 3 at the time of trial How old are they now? I would have to double check that with the birthdays, Your Honor, but slightly older in a few months span for each of them Well, when the order was entered, when? The order was entered on May 18th of 2015, Your Honor So we're talking a year Approximately, yes, a year, depending on when their birthdays were, they're all approximately a year older, Your Honor Okay The appellant, I have Amanda Biasigot representing the appellant Ginger Denosky, the mother of the minor children, has appealed as to several issues in this case, Your Honor The first of which is she believes that the trial court abused its discretion when it failed to name her the primary residential custodian of the minor children in this case You know, I'm going to interrupt you because I know you only have 15 minutes and I have some questions, so I want to get right to it Yes I'm interested in the court's designation of the mother of Mr. Denosky as an expert witness Yes, Your Honor, that was the main issue I want you to tell me about that because from my understanding, there was a 213 issued that this woman was going to testify as an expert, is that correct? Your Honor, the issue that we had, and I'm sure the court's reviewed the transcript No Excuse me, the facts that we've read in this case Yes The issue that occurred was that she was not disclosed as an expert witness in terms of an answer to her interrogatory request until the eve of trial Okay, but that is not answering my question Okay So under Rule 213F, you have lay witnesses, opinion witnesses, and independent experts, which don't apply here So I'm asking you, was the grandmother essentially designated as an expert witness under 213F to give expert opinions, not lay opinions, but expert opinions? Correct, Your Honor And that was done when? If that was done, and I would have to read If it was done I would have to read the phrase that she was sent as well as how it was answered back as to the distinction of a sort of a controlled expert witness It was not answered that she was going to be providing any expert testimony until the eve of trial So did they amend their pleadings, or what happened? They sent to me an updated or supplemental list She had previously been disclosed as a witness in the case, obviously she's the grandmother However, she had not been disclosed that she was going to be presenting expert testimony and being used as an expert in asking questions, providing expert testimony to the court prior to the eve of trial Which obviously is not sufficient time for my client or I to decide if we need to depose her, to decide if we want to retain our own expert to combat that What expert opinions was she allowed to testify to? Yes, Your Honor, if you look at my brief, there were a myriad of things which she began to testify about Including things such as whether or not in her expert opinion it would be good for these children to move school districts Whether or not in her expert opinion these children may face regression in their schooling due to a potential move I want to ask about that particular opinion because I saw that one and I want to ask you this Did this woman have any special expertise? It's my understanding she was a daycare provider for 30 years That's not correct, Your Honor, she was not a daycare provider, she is a teacher She's a teacher of what? She's a special education teacher and has credentials which were submitted to the court in terms of being a special education and I believe a reading specialist teacher So she was not a daycare provider Okay, so I misunderstood that, I appreciate that clarification So is this the grandmother who said that she cannot take care of the children on a long-term basis because of her age? That is correct, yes Okay, and that was true of the grandfather as well, they said to the court that they cannot take care of the children, you know, on a long-term basis because of the number of kids and their age Correct, their age and health I think also is a concern for the grandfather Okay, so she was allowed to testify using her credentials and you did not get that information until just before trial? That's correct, Your Honor, and she would be testifying as an expert, yes Okay, and one of the issues that the court ruled on was the fact that the children moving, they could not be, that a special education could not be continued And that the grandmother, you know, basically the court adopted the grandmother's testimony as a reason not to move, is that correct? I believe that it heavily relied on the testimony of the grandmother, which was more extensive than even the testimony of the child speech pathologist and the child psychologist And any of those things, all of whom had testified, as I'm sure the court's aware, as most people are aware Children have an IEP, it's federal law, others testified to that All of these services have to be offered to a child, their IEP, their individualized education plan has to be followed by any school district within the United States Right, so any child presenting to a school, even parochial schools now, if you have an IEP, have to have the services provided That is correct So, and I saw that the court relied heavily on that issue, and I'm wondering if that came from the grandmother, it's my understanding it came from the grandmother Who was allowed to testify as an expert on the eve of trial, is that fair or unfair? That's a fair assessment from our opinion, Your Honor, as we believe that the trial court judge heavily relied on that testimony Obviously, we could not combat that testimony outside of having the officials, the speech pathologist and the child psychologist And those that deal with individualized education plans testify that clearly they are offered in every school district across the United States And I believe Judge Dent even referenced in his ruling in this case, acting like there was no information presented to this court concerning other school districts Or whether or not, you know, these children, and actually it's only the oldest child who was kindergarten age, Your Honor, at the time that this was done Whether or not his services could be met The current situation at the time of this case was we had three children, six, four, and three Only the oldest child was even in actual elementary school He was in kindergarten at this point in time And the only services that this child were receiving are speech therapy services and a five-minute monitoring for behavior services He's in a regular education classroom So, you know, there was much ado about all of the difficulties and all of the problems, you know, that these children may or may not have had And primarily the oldest over the years, which in our opinion, quite frankly, is a giant red herring in this case And was an excuse for a local trial judge to rule in favor of a local party and the local parents who have been The, excuse me, local grandparents who have been a part of this school district and to rule in favor of a very, very small local school That in fact had the most inferior scores of any school presented to this court Part of our rationale for that, Your Honor, is our question as to why Ginger was not at least named the primary residential custodian Which would have, should have, in order for the children to at least be going to school based on where she resides Which is in the Heron School District, which has significantly better school report cards and test cards than the Ziegler School District And what the child are attending and what the trial court has done is that it has made three children for the rest of their lives Essentially at this point be stuck in an inferior school district when we had one who was six months in their kindergarten at the time that we were at trial You know, there is a huge impact that is made when the court makes this finding As to how it's ever going to be modified and you have now made all of these children stay in this rural inferior school Even if you didn't allow her to move the children from the state of Illinois You know, there is no reason with her being the primary caretaker admitted essentially by both parties Even the court finding that as part of its ruling, she had primarily been a homemaker with these children That she should not have been named the primary residential custodian of these children and these children allowed to attend school Based on where she lived, which also was in fact a better school district for these children And that all went into the record as I understand That is correct, Your Honor And so, there's another part of the court's order and I apologize for taking your time But I really need to understand this The court said that neither child has been diagnosed with autism Be that as it may, the distinction of being diagnosed with autism And exhibiting behaviors very suggestive of the presence of autism is a distinction with little or no difference Where did that come from? I believe that came from his own personal opinions and preferences, Your Honor Because it certainly is not based in any accuracy It was quite clear from the record with every individual that we asked That none of these children have been diagnosed with autism There may be some factors or signs or behaviors that may be associated with autism with regard to the oldest child But I think we all know you have to be very careful with placing those labels And I objected several times when autism was referenced When questions about autism spectrum disorder were referenced Who brought that up? What expert? I mean, autism is a constellation just like cerebral palsy You just don't have cerebral palsy, you just don't have autism That's correct, Your Honor So who was the expert who gave the court the basis for this paragraph about autism? Who brought that up? There is a reference in the IEP of the oldest child As to he has some signs or some factors which may be associated with autism The child was six? That's correct, actually it was probably five It's an older IEP, it was probably four or five at the time actually That that is referenced in the IEP of the oldest child, Your Honor That's the only reference that it was made And then Mr. Donosky's attorney then questioned I believe the child psychologist as well as maybe the speech pathologist If I would look, as to the reference of that in the IEP And then of course Mrs. Donosky, the grandmother Was also asked about this reference and behaviors And did she give expert testimony about that issue as well? Yes, I believe that, I mean, her knowledge, you know I mean, the entire basis of the majority of her testimony Was not observations of a grandparent They were all couched with that she has the expertise With which to identify all of these issues And say how it is they will affect this child And whether or not they're a diagnosis She even went so far as to say she believes the children Have other diagnoses that have not been mentioned anywhere Or found by any, you know, medical professionals I was very clear to ask, and there is no person Whoever testified, and they all agreed with my question That none of these children have ever been diagnosed with autism The children regularly see their doctor No doctor has ever suggested that they go see an expert Or a diagnosis of autism We all know in this area, we have an SIU autism center In Carbondale, clearly that's a reference That if needed to be made, this child could have gone and seen And there could have been a diagnosis made If that's something that needed to be done But it has not been done, but yet, as you pointed out We have that mention in ruling from the court Which I think is highly prejudicial I think it is not founded in fact Or based in law I was very clear to object every time questions were asked Regarding the autism spectrum disorder and autism Because we were not talking about a child Who has been diagnosed with autism Well, it just seemed to me that the disorder Relies heavily, not only on that issue But on the issues we discussed earlier About this whole behavior issue That we can't somehow meet the IUP And so you have to stay right where you're at And so I was wondering Who gave that expert opinion? And I was... You've confirmed that it was the grandmother But it's the same grandmother who says She can't take care of the children on a long-term basis Whereas her mother and father have said they will Is that true? That's correct, Your Honor The maternal grandmother in Louisiana is a daycare provider And they were willing to assist her in moving to Louisiana Well, you may finish that sentence And that's one of our concerns, obviously And points in contention for being able to move Was the fact that she has absolutely no support system here And this ruling has made her continue to be Financially and dependent in all terms On her ex-husband and her ex-husband's family What kind of evidence was introduced, if any As to the school system in St. Tammany Parish? And is it okay if I go over time in answering that? Right, we'll give the other side equal time Okay, the... Just throw the record in If the justice asks you a question Yeah, you get to answer it Just to be sure Yes My client testified regarding the school district That's the school district in which she attended Whenever she lived there Her mother also testified regarding that school district And as with all of the school districts The state school report cards were presented As evidence to the court For Ziegler, for Heron As well as for the St. Tammany Parish in Louisiana Okay, thank you Okay, you'll have a few more minutes For us to talk I'm sorry I took so much of your time Okay Is it Surratt? Yes, Your Honor Okay, Ms. Surratt I guess we'll grill you the same way I'm taking notes Didn't want to miss anything So if it may please the court and counsel If I may begin I'm just going to kind of start Where we just left off a little bit Especially on the autism As you can see from the judgment This was a very complex case This isn't your typical run-of-the-mill case With children that have no issues Yes, we are dealing with young children And young children aren't usually able To adapt to new rules and changes But these aren't your typical Four, five, six years old They have started out at the age of two With issues And the evidence that we presented And the only evidence That the appellant presented On her behalf Was just her own testimony Well, I'm concerned about the fact Is it true that you Quote, updated your answers To interrogatories under 2018? I added five words Ms. Donowski was actually disclosed In the initial answers Months prior And her CV that was 20 pages long Was also attached as an exhibit To her interrogatory answers Which means if you Intended to present her As an expert And you attached her CV Then under 213F You would have disclosed her As an expert witness And under that portion of the rule You would have had to give Not only her opinions But the basis for her opinions Understandable Did you do that? Not at the beginning, no Because we didn't intend to use her But you just Because we wanted to bolster Her credibility as a witness And because we have to provide Documents that we intend To use at trial I wanted to provide that To the other side So she had it to look at If she wanted to take The deposition of her Okay, but that doesn't Give opinions So when did you first Tell them When did you first do that? I disclosed her a couple of days Before trial And I added the sentence She's going to testify How it would affect The move would affect the children Okay, and that does not Comply with 213F No, it doesn't, Your Honor And my response to that, however Is if you read the transcript And I'm sure you will After this that was attached To Ms. Scott's brief That she advised the parents To do because she had All that experience That we had provided Now we understand that That 213 you are to Disclose these experts We were not trying to Throw a surprise on her At the last minute It was one of those things When you're doing your Trial prep work You're like I should have Listed her under this last And under the 213 comments The biggest issue is To avoid surprise There's no surprise in this case That Ms. Donasky Was living literally On the next wall over From John and Ginger During the embarrassment Isn't there a distinction Between observations That a layperson can make Including a grandparent And forming some sort of Opinions as an expert Or as a learned Intermediary or whatever Type of status And 213 is really aimed At the latter isn't it I believe so And that's why we didn't Disclose her in fact Because she was just Testifying to her own Observation and what she Believed was going on With the children But in laced into Her observations Based upon her experience As a teacher yes Because she was basing Her observation as the Retired teacher slash Grandma you know And her testimony I don't believe honestly Is as important As the influence That Ms. Scott And the appellant Want to place on it Because Judge Dean Actually looked at me And said okay Go ahead put her on the stand But apparently he gave Her a lot of basis Well it doesn't matter What he said to you first You obviously convinced him That her opinions Should be believed And it seems to me In the order that he wrote That her quote expert Opinions were given A lot of weight So it concerns me That her opinion Was given as much weight As what seemed We presented four witnesses In addition to Ms. Danowski One the speech therapist One the psychologist That actually is the one That did the IEPs on the children They're the ones that Mentioned autism Ms. Danowski didn't mention autism These are the people That observed the children In the school environment Who was the one That testified That given their issues Removal to Louisiana Would be inappropriate Who gave that opinion I believe that Ms. Danowski gave One of those opinions But Bethany Dwyer Also testified That a change in school Districts came in effect Came in effect Yeah I mean It can affect any child And as I read the briefs When the children First moved to Royalton And went to this daycare They had some issues And then they got some Not therapy That's not the right word But services It was therapy  No they didn't pop right out of it I'm sorry to disagree your honor Okay well at least If they didn't pop right out If the therapy worked In other words They adapted to their new environment In Royalton I have to disagree politely With that your honor Because I believe That these children Have a lot of issues still Well I'm not denying that I'm just talking about the move Well when they moved in 2010 That was in 2010 Before the daycare At the Busy Bee Learning Center Where these issues were first found And the services were just started Now you fast forward to school And now it's been Two to three years even more And we have first off The oldest child He can't answer the question What did you have for breakfast And he says I went to the store last night This isn't a child He's in first grade And he's having difficulties Understanding how and why questions And he's finally She said Yes And she said That he she believes The significant progress That he has made Is based upon his familiarity With her and this routine And consistency that he has In that school system With her in particular And she said that as long as He stays in the Franklin What if she leaves Well of course that's always a possibility What if she leaves that school district Are you saying that the child Will just kind of fall apart No What's going to happen But apparently the child He has to have things a certain way And my biggest issue With this entire case is Is the penalty Providing any evidence That it would not affect him That there is a lower chance That it would affect him If anything The trial court did not Abuse its discretion He looked at the speech therapist The child psychologist The grandma who also has a long list Take grandma out of the picture And just look at the IEP What's been going on in school What the Busy Bee Learning Case has said Along with everything else You still see children That will be affected But you don't keep children Because that's not That general philosophy Agreed And the school district That the children are in right now Does not have the kind of Quality that the Heron School District does According to the school report card Correct I would dispute that Those report cards do not Demonstrate what special education Capabilities each school district has It's an overall general She doesn't know What special needs services They would have She just assumes they'll all be the same And yes, each school district Under federal law Still has to comply And issue services Pursuant to the IEP However, you're taking a child That's familiar with his environment Making progress in his environment According to his teachers And then you're taking him from that Putting him to the school And say And the IEP doesn't even transfer At least 10 days And then you hope this child The teacher figures out What this child needs You figure out what service He needs in those 10 days Well, you don't think the mother Can relate that Well, based upon the mother Not testifying that she didn't Even know the second one Middle child had an IEP in place And the fact that he was Not her own testimony Well, an IEP is in writing, isn't it? Yeah, that's why I was shocked She didn't know that So The paper can be transferred If there's nothing else The paper But what about the people? No, I'm just asking questions I don't want you to think That I have my mind made up I understand, Judge I'm really just asking questions Because I'm very concerned About the disclosure And the impact As I read the order The impact that this Janowski had On the court's order He seemed to rely very heavily On her testimony And I don't think you would Disagree with that I believe he relied on it, yes I don't believe it was the only factor Because I sat there inside of him I listened to him on chambers And certain things, of course, off record So, no, I do not believe That Ms. Janowski was the The one The one that made the decision for him You know, because he followed up With questions with all the witnesses He dug in deep But the bottom line is When you put the evidence in a pot And you weigh him, appellant versus appellee All we had is mother Who said, we got some report cards These school districts are better The kids don't have issues with me She admitted All the other people that testified They still have issues We're correct And then she testified The middle doesn't have an IEP He's not receiving services Which was, again, contrary To what all the other witnesses Stated on that police site You just You just do a weighting factor And it appears that the judge Did not use his discretion In reaching the decision There's two There's two, the middle and the oldest Noah and Sine both have IEPs in place Sine was the only one That had the word autism Mentioned in his IEP However, the middle child Which is 18 months younger than the oldest He also had an IEP And exhibited similar traits As Sine, the oldest What services is he receiving? He was receiving speech therapy as well Now his are a little different He, for instance Every time a bell rings in a class He'll grab his ears And say, what is that? What is that? If he's in a public restroom With his father And the toilet flushes You have to warn him Because those loud sounds Really scare him And they will sit in the corner With his hands over his ear scared You know, so there were Ms. Dreyer actually testified That there were a lot of Differences Now you and Luckily He's the youngest And he has not exhibited any signs They started him at therapy At Busy B where the other oldest went And he actually did a lot better And so he's not receiving any services And he's in Pre-K now But you take these two oldest boys Who do have these issues Do receive these services And take them from what they know What they're familiar with The routine they know Because the parties They tried this every few days Switch in the beginning And both of them testified It didn't work Both of them testified That they wanted joint custody Both testified that the week-to-week Schedules were working for them Because it had the consistency For the boys But that's my point here The week-to-week schedules do work Which means the children As well as the toilet flush issues The noise issues That child is being moved From one residence to another residence The father's residence The children have an inadequate space to sleep Correct? Or at least at the time of trial The house During the marriage at one point After the filing The house was under construction The bedroom was complete At the time of trial And what about the bathroom Did they all go to sleep Or how did they sleep They all slept in the same room But they all had their own beds And the ages of these children They're actually extremely close And they enjoy that bond But they sleep in a room With their dad, right? Dad sleeps in there To help them with their night terrors He doesn't choose to sleep in there Because he has nowhere else to sleep He sleeps in there Because Sign and Noah Are scratching and pulling at his arms So Then they're moved And then the mother has to put up with that Well, according to her Those don't happen in her house Whether they do or they don't The children move They do, Judge But the one thing that's consistent The same house Mom's house, dad's house Same people Mommy's there, daddy's there The school, same They know when they're going to dad's They can rely on the schedule They can rely on the structure They can rely on the routine Yes, there's a change But the change is from mommy's house To daddy's house And they have come now A year and a half later To focus on that And know we're going to mommy's house Today we're going to daddy's house Because they are very smart children They just have these issues That if they're stuck in the same school district The internet However, the people at Royalton That are helping these children are priceless And to just take them out of the school district Because it's local And we believe the local judge Roles in favor of the local family Because of the local school district It's not it We have to look at the big picture And look at these children And we have to look at what's best for them And the children are succeeding In this environment that they're in Okay, thank you very much Thank you Scott What do you have to say about all that? Yes, your honors I'll try to be quick in my time here And address a few points That are important With regard to the significant impact That Mrs. Donosky's testimony had I think it's clear from the record It was heavily relied on The justice mentioned The point of having that disclosure Is to avoid surprise You know, whether or not She was named previously There were all sorts of opinions Which she was allowed to testify about Which there was no way For us to be able to counteract When that's only disclosed to us A couple of days before trial And I would point out As Ms. Surratt admitted The opinions were actually not disclosed Except for the general statement That she would not be testifying Regarding her opinion About whether or not the children should move And thus as to the multitude Of opinions that the court Allowed her to give in the case And you will note that I objected numerous times As to Mrs. Donosky's testimony And it was sustained numerous times Because as you're, I think, seeing What happened was Is that all of her so-called observations And so-called factual testimony Became interlaced with opinions It was clear that it was interlaced With opinions That her CV had not been Admitted to the court She was not being tendered As an expert witness So they were not trying to use her as an expert But yet they were asking her All sorts of questions That only an expert could answer Her testimony is longer Than any of the other So-called potential experts in the case It is lengthier Than the speech pathologist Than the psychologist That helped prepare the IEPs For receiving services He is in a regular education classroom And receives speech pathology services At the time that we were at trial The second child While he may have had an IEP And had previously received Some speech services He was not at the time of trial To the best of my recollection Receiving any services At that point in time We have young children Who have developmental delays As is very, very common And had always improved During the course of this process It is I don't want to neglect the fact That again highly also prejudicial to me And in viewing the court's decision In this case is the fact That no child support was awarded in this case When whether you had An equal parenting plan or not You had a mother Who had no job at the time That this trial was done Who was using a borrowed car From her parents And had no child support I believe that the court The trial court in this case Clearly abused its discretion On every single issue That was presented to it It relied on evidence That was not disclosed On opinions that were not disclosed It relied on an autism diagnosis That does not exist in the record And you know what Everybody loves their speech therapists And the people that work with their children But that does not mean That they will not continue to excel Just as they would In the Williamson County Special Education District Which is where Heron is located Ms. Surratt's statement That Ginger presented no evidence About any services Or would not be able to get them for her children Is incorrect And absolutely erroneous Because she specifically testified She had gone to the effort To contact the school in Louisiana To make sure and inform them If my children came there That they could continue To fulfill those obligations And they all said that they could Besides the fact that it is federal law As the speech pathologist And the psychologist And everyone testified to And another point that is important In this case to remember Is there was a whole lot of testimony here About the history Of the difficulties with the children Yet all of those difficulties Had significantly reduced over the years And I do believe That we have ultimately gotten better To the point of where are we at a trial Where are we at now We're at the point where we have All of these children In regular education classrooms And we have one child That is receiving speech pathology services You know, I think we have to be Very, very cautious in this case And it is very concerning to me Because I have a child that has delays That receives three times the services As this child And to put a label on a child That this small town Is the only one that can service this child And that he's better by having that service As opposed to being in a better school district Where he might receive a better education Let alone the fact that he has two other brothers That you're forcing also to go To this inferior school district Should have been considered by this court And it was an abuse of discretion To have made this court Thank you Okay, we'll take this matter under advisement And this position will be issued in due course Thank you both for your arguments